UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHRISTOPHER PREST                                    CIVIL ACTION NO. 14-2235

VERSUS                                               JUDGE S. MAURICE HICKS, JR.

WELLS FARGO BANK, N.A.                               MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendant Wells Fargo Bank's ("Wells Fargo") Motion to Dismiss and Renewed Motion to Dismiss. (Record Documents 10 and 16). Wells Fargo seeks dismissal of any and all of Plaintiff Christopher Prest's ("Prest") claims based on failure to state a claim. Plaintiff opposes the motions. (Record Documents 14, 24 and 29). For the reasons which follow, the Motions to Dismiss are **DENIED**.

**RELEVANT BACKGROUND**

Prest decided to purchase a residential lot in Caddo Parish and construct a home on it in the spring of 2012. (Record Document 12 ¶ 3). Prest contacted Wells Fargo to assist with the financing for the house and the lot. (Id. at ¶ 5). To begin the process, Prest met with Terry Fonseca, Jr. ("Fonseca") at Wells Fargo. (Id. at ¶ 6). In order to secure the loan, Wells Fargo required that Prest submit extensive personal and financial information, which was provided by Prest. (Id. at ¶ 7). At some point during the negotiations, Prest alleges that he and Wells Fargo entered into a "written credit agreement, which was in writing, expressed consideration, set for the relevant terms and conditions, and signed by both Prest and a duly authorized Wells Fargo agent." (Id. at ¶ 8).

Prest's credit was approved by Wells Fargo, and Wells Fargo ordered an appraisal

of the lot and the proposed house that was to be built on the lot. (Id. at ¶ 10). After a period of time, Prest was notified that his loan had been approved and "locked in" with an interest rate of 3.375%. (Id. at ¶ 12). Wells Fargo then sent its letter of guarantee to Rural Housing Services of the United States of America ("Rural Housing"), which notified Prest that it would guarantee to Wells Fargo the repayment of the loan. (Id. at ¶ 13). Once the letter from Rural Housing was received by Fonseca, he worked with Community Bank of Shreveport ("Community Bank"), for Community Bank to provide Prest with interim financing. (Id. at ¶ 14). Community Bank agreed to provide Prest with the interim loan. (Id. at ¶ 15).

Once Prest obtained the interim loan from Community Bank, he used those funds to acquire the lot, make improvements to the lot, and make an initial deposit so the "manufacturer" could begin construction of the house to be placed on the lot. (Id. at ¶ 16). During the construction of the house, Fonseco updated Prest's loan information two times in order to protect the 3.375% interest rate on the Wells Fargo permanent loan. (Id. at ¶ 18). After several weeks passed without any communication from Fonseco, Prest went to Wells Fargo and learned that Fonseco was no longer with Wells Fargo and that no one in the office knew about the loan. (Id. at ¶ 19). Several days after visiting Wells Fargo, Prest was contacted and informed his paperwork was in order, and that there was an anticipated closing in September, 2013. (Id. at ¶ 20).

By early October, 2013, the closing had still not occurred. (Id. at ¶ 21). Prest contacted Damien at Wells Fargo, who informed Prest that he did not have any information

about the closing date.[1] (Id. at ¶ 25). Prest then contacted Bertha, Damien's supervisor, who informed Prest that she could not provide any answers. (Id. at ¶ 26). Bertha provided Prest with the name of Brian, who worked in the St. Louis, Missouri office. (Id. at ¶ 27). Brian informed Prest that Wells Fargo was trying to determine if Prest's house met the guidelines and requirements of Wells Fargo's policy. (Id. at ¶ 28). Prest later receeived a telephone call from Brian, informing him that Wells Fargo would not make the promised loan, due to a "recent guideline change" made by Wells Fargo. (Id. at ¶ 29).

Prest and Community Bank began the process of finding a new permanent lender for Prest. (Id. at ¶ 32). Ultimately, Prest was able to obtain a permanent loan from American Southwest Mortgage on February 5, 2014. (Id. at ¶ 33). The interest rate for the loan from American Southwest was 4.25% instead of the 3.375% that was guaranteed by Wells Fargo. (Id. at ¶ 34).

Wells Fargo has filed a Motion to Dismiss (Record Document 10) and a Renewed Motion to Dismiss (Record Document 16). Prest has filed two Memoranda in Opposition to the Motions to Dismiss (Record Documents 24 and 29). Wells Fargo additionally filed a Reply to Response to Motion re Motion to Dismiss (Record Document 30).

Prest is seeking compensatory damages based on breach of contract, tortioius conduct, unfair trade practices, and mental and emotional distress. (Record Document 12).

---

[1] Only the first names "Damien", "Bertha", and "Brian" have been provided to the Court.

**LAW AND ANALYSIS**

    **I.    Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

    **II.    Louisiana Credit Agreement Statute**

Under the Louisiana Credit Agreement Statute, "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. R.S. 6:1122. For the purposes of this statute, a credit agreement is "an agreement to

lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La. R.S. 6:1121.  The word creditor refers to "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor", where debtor refers to "a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." Id.  Financial institution is defined as "a bank, savings and loan association, savings banks, or credit union authorized to transact business in this state." Id.

**III. Analysis**

A. Converting the Motion to Dismiss

Prest argues in his Opposition to Motion to Dismiss, that the Motion to Dismiss must be converted to a Motion for Summary Judgment based on the fact that the Defendant attached documents to the Motion to Dismiss.  FRCP Rule 12(d) establishes that

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Wells Fargo's Motion to Dismiss contains an attached exhibit, which is titled the "Mortgage Credit Approval Letter." (Record Document 10-2).  The question then is whether this exhibit is a matter outside the pleading, such that the Motion to Dismiss must be converted to a Motion for Summary Judgment.  It is established that "the court may review the documents attached to the motion to dismiss, e.g., the contracts in issue here, where the complaint refers to the documents and they are central to the claim." Kane Enterprises v. MacGregor (USA) Inc. et al. 322 F. 3d 371 (5th Cir. 2003), citing Collins v. Morgan Stanley Witter, 224 F. 3d 496 (5th Cir. 2000).

In this instance the "Mortgage Credit Approval Letter" that is attached to the Motion to Dismiss is referred to in the Complaint, and it is central to the claim of whether there exists a signed agreement between the parties regarding the loan. For this reason, the Court will treat the motion as a Motion to Dismiss.

### B. Louisiana Credit Approval Statute

Wells Fargo argues in their Motion to Dismiss that under the Louisiana Credit Approval Statute ("LCAS"), Prest has failed to state a cause of action. The first question is whether the LCAS is applicable to this claim. There is no dispute that Wells Fargo is a creditor, in that it is a financial institution that extends credit, and that Prest is a debtor, as he is a person that sought credit from Wells Fargo. A credit agreement is required to be "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La. R.S. 6:1121. In order to satisfy the "credit agreement" requirement, the agreement must be: (1) in writing, (2) express consideration and set forth its relevant terms and conditions; and (3) be signed by the creditor and the debtor. La. R.S. 6:1122.

Wells Fargo is arguing that Prest has not sufficiently pled the existence of an enforceable credit agreement under the LCAS. Prest, in his Amended Complaint, alleges:

> Upon information and belief, at some point during the negotiations, Prest and Wells Fargo entered into a written credit agreement, which was in writing, expressed consideration, set for the relevant terms and conditions, and signed by both Prest and a duly authorized Wells Fargo agent.

(Record Document 12).

Wells Fargo asserts that "plaintiff offers absolutely no information whatsoever regarding the supposed written agreement other than the bald assertion that it avowedly exists..." (Record

Document 16). It is apparent to the Court that there have been discovery disputes between the parties regarding the written credit agreement referred to by Prest in his Amended Complaint.[2] There is no dispute that at this time, Prest is not in possession of the written credit agreement. Discovery requests were made upon Wells Fargo to produce the document, however Wells Fargo has stated that they are not in the possession of such a document.

The question then becomes whether the pleading itself is sufficient to state a claim, without the written credit agreement being produced at this time, and it being unclear whether it can be produced in the future. When a plaintiff has plead that a written offer was extended by the defendant, and the plaintiff accepted such offer, under the liberal notice-pleading standard of Rule 8, this is a sufficient pleading to provide notice to the defendant of the factual basis for the claim. See EPCO Carbon Dioxide Products, Inc. V. JP Morgan Chase Bank, NA 467 F. 3d 466 (5th Cir. 2006). Additionally, "[a]lthough courts in this circuit have previously dismissed claims under rule 12(b)(6) in reliance on the Louisiana Credit Agreement Statute, in those cases the non-moving party either pleaded or conceded that its claim was based on an oral or unsigned agreement." Id.

Prest has not plead or conceded that the claim was based on an oral agreement or an unsigned agreement. The Amended Complaint contains the verbatim language of the LCAS as to the writing requirement. Under the liberal pleading standard of Rule 12(b)(6), Prest has plead sufficient facts to state a cause of action under the LCAS.

---

[2]The hyperbolic language contained in the briefing is excessive, and the attorneys are reminded that this is briefing and not oral argument.

**CONCLUSION**

Accordingly, Wells Fargo's Motions to Dismiss (Record Document 10 and 16) are **DENIED**. An order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 17th day of March, 2015.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE